[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] STATEMENT OF FACTS
CT Page 14580
This is a personal injury action brought by Ryan Wall (hereafter Wall) who claims to have sustained personal injuries while using a chemical cleaner at Nodine's Smokehouse, Inc.'s (hereafter Nodine's) premises on May 20, 1996, and again on May 21, 1996. Specifically, it is Wall's claim he was instructed by defendant's employees to clean meat packing equipment and the facility using a hazardous toxic chemical consisting of potassium hydroxide ("potassium") and tetrasodium ethylenediamine tetracetate ("tetrasodium"), which substance had been identified by the defendant only as "Rapid Clean" and that, as a result of not having been provided site specific hazard training and appropriate personal protective equipment, he suffered burns on both arms, the scalp, the face, and a cornea, bodily disfigurement, post traumatic stress syndrome, and mental and physical pain and suffering.
The Amended Revised Complaint of May 26, 1999, alleges six (6) causes of action. The defendant has moved to strike Count One (Strict Liability) and Count Three (Fraudulent Concealment).
Argument was heard on August 6, 1999. The parties submitted memoranda of law, the last of which was dated August 31, 1999, but forwarded to the court on September 21, 1999.
LEGAL STANDARD
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael. Inc. v. Sea ShellAssociates, 244 Conn. 269, 270 (1998). Practice Book § 10-39
allows for a claim for relief to be stricken only if the relief sought could not be legally awarded. Pamela B. v. Ment,244 Conn. 296, 325 (1998). "A motion to strike is the proper procedural vehicle to test whether Connecticut is ready to recognize some newly emerging ground of liability." (Internal quotation marks omitted.) Grady v. Guerin, Superior Court, Judicial District of Stamford — Norwalk at Stamford, Docket No. 160239 (April 23, 1998. Lewis J.); accord Shaham v. Wheeler, Superior Court, Judicial District of Danbury, 17 Conn. L. Rptr. 232, 233 (June 26, 1996, Moraghan, J.). The court is limited "to a consideration of the facts alleged in the complaint." Doe v. Marselle,
CT Page 1458138 Conn. App. 360, 364 (1995), rev'd on other grounds, 236 Conn. 845
(1996). For the purpose of a motion to strike, the moving party admits all facts well pleaded. RK Constructors. Inc. v. FuscoCorp., 231 Conn. 381, 383 n. 2; see also Ferryman v. Groton,212 Conn. 138, 142 (1989). The court must construe the facts in the complaint most favorably to the plaintiff. Faulkner v. UnitedTechnologies Corp., 240 Conn. 576, 580 (1997). ". . . [I] n passing on a motion to strike based on a claim of failure to state a cause of action, we must take the facts alleged favorably to the pleader and view those facts in a broad fashion, not strictly limited to the allegations, but also including the facts necessarily implied by and fairly probable under them." Zeller v.Mark, 14 Conn. App. 651, 654 (1988).
ARGUMENT
A. Count One — Strict Liability
In this count, the plaintiff alleges that Nodine's was engaged in a dangerous and hazardous activity for which Nodine's is strictly liable. Specifically, the Amended Revised Complaint alleges:
 1. Nodine's equipment and facilities were cleaned using a "dangerous and hazardous chemical substance." Paragraph 7.
 2. On the two (2) dates in question, Nodine's manager ordered Wall to clean with a "liquid chemical" substance he identified as "Rapid Clean," to use a brush to apply the substance, and to wear the plastic gloves provided. Paragraphs 9-14.
 3. Nodine's failed to provide the plaintiff "specific hazard training pursuant to 29 FCR Section 1920 1200(h) et seq. and Section 1926.59(h) et seq." Paragraph 13
 4. The cleaning substance contained "an undiluted form of potassium hydroxide" and tetrasodium ethylenediamine tetracetate, which was, unknown to him, "a hazardous toxic chemical." Paragraphs 15 and 16.
 5. Despite, on the second of these occasions, using additional personal protective equipment on his own initiative, he ingested airborne particles of an ultra-hazardous toxic chemical and inhaled fumes — all without having been allowed CT Page 14582 adequate protection or safeguards and thereby sustained third degree burns. Paragraphs 17 and 18.
 6. Nodine's failure to correct, warn, protect, and inform Wall of these "health hazards and dangerous conditions" constituted intentional, willful, and wanton disregard of the plaintiffs health.
Wall asserts Nodine's was engaged in an "abnormally dangerous" activity and is therefore strictly liable to him for his injuries.
The defendant claims this count should be stricken for the reason that the plaintiff has not pleaded and cannot plead any facts to support the claim the activity was "abnormally dangerous" so as to warrant the imposition of strict liability and further claims this chemical product can be used safely and that the risk of injury could have been avoided. In pertinent part, the Restatement (Second) Torts, § 519(1) provides, "One who carries on an abnormally dangerous activity is subject to liability for harm . . . resulting from the activity, although he has exercised the utmost care to prevent the harm." Comment d states the liability arises out of the abnormal danger of the activity itself and the resulting risk of harm to those nearby. Under § 520 of the Restatement, the following factors are to be considered in determining whether an activity is abnormally dangerous:
 (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
 (b) likelihood that the harm that results from it will be great;
 (c) inability to eliminate the risk by the exercise of reasonable care;
 (d) extent to which the activity is not a matter of common usage;
 (e) inappropriateness of the activity to the place where it is carried on; and
 (f) extent to which its value to the community is outweighed by its dangerous attributes. CT Page 14583
Comment f to this section provides that, for an activity to be considered "abnormally dangerous," it not only must create a danger of physical harm to others but that danger must be an abnormal one. It further states such finding does not require all of the above factors be present. "Any one of them is not necessarily sufficient of itself . . . and ordinarily several of them will be required for strict liability." Id. See also Greenv. Ensign-Bickford Company, 25 Conn. App. 479, 487 (1991). The issue whether an activity is abnormally dangerous is a question of law for the court to decide. Id. at 485. The essential question is "whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care." Comment f to § 520. Another important factor to consider is the impossibility of eliminating the risks by the exercise of reasonable care. Comment h. When safety cannot be attained by the exercise of due care, there is reason to regard the danger as an abnormal one. Id. "It is not necessary . . . that the risk be one that no conceivable precaution or care could eliminate. What is referred to here is the unavoidable risk remaining in the activity, even though the actor has taken all reasonable precautions in advance and has exercised all reasonable care in his operation so that he is not negligent." Id. Similarly, our Supreme Court has held certain factors must be present to invoke strict liability for ultrahazardous activity: "an instrumentality capable of producing harm; circumstances and conditions in its use which, irrespective of a lawful purpose or due care, involve a risk of probable injury to such a degree that the activity fairly can be said to be intrinsically dangerous to the person or property of others; and a causal relation between the activity and the injury for which damages are claimed." Caporale v. C.W. Blakeslee Sons,Inc., 149 Conn. 79, 85 (1961).
The plaintiff argues the court must hear evidence to determine whether the questioned activity is ultrahazardous and must therefore look beyond the four corners of the complaint and cites to Woodford v. Heritage Village, Docket No. 114794, Waterbury Superior Court, December 21, 1994 (Sullivan, J.) for this proposition. There the court denied the motion to strike and concluded that motion was not the appropriate vehicle to determine whether the application of pesticides was ultrahazardous. A similar conclusion was reached in Polymetrics,CT Page 14584Inc. v. Jones Chemical, Inc., Et Al, Docket No. 500452, Judicial District of Hartford — New Britain at Hartford, March 2, 1992 (Burns, J.) That court concluded the question whether the transferring and loading of hydrochloric acid was an inherently dangerous activity and the weighing of the relevant factors, as enunciated in § 520 of the Restatement involved mixed questions of fact and law. These cases, however, appear inapposite to the longstanding rule that the court, when considering a motion to strike, is limited to the facts alleged in the complaint. Waters v. Autori, 236 Conn. 820, 825 (1996). A speaking motion to strike (one imparting facts outside the pleadings) will not be granted. Doe v. Marselle,38 Conn. App. 360, 364 (1995), rev'd on other grounds, 236 Conn. 845 (1996); see also Cavallo v. Derby Savings Bank, 188 Conn. 281, 285-86
(1982). Holding an evidentiary hearing would, by requiring the court to consider facts outside the pleading, frustrate the function and purpose of a motion to strike, a view shared by the overwhelming majority of superior courts who have considered the issue. See, e.g. P.R.I.C.E., Inc. v. Keeney, Judicial District of Hartford — New Britain at Hartford, Docket No. 94 0542469 (July 10, 1998, Hale, J.); Goodrich v. Jennings, Judicial District of Stamford — Norwalk at Stamford, Docket No. 150074 (May 22, 1997, Mintz, J.) (19 Conn. L. Rptr. 542); Mirarchi v. Jennings,
Judicial District of Stamford — Norwalk at Stamford, Docket No. 152917 (May 22, 1997, Mintz, J.); Skelton v. Chemical Leaman TankLines, Judicial District of New Haven at New Haven, Docket No. 359236 (May 13, 1996, Corradino, J.); Connecticut Water Co. v.Thomaston, Judicial District of Hartford — New Britain at Hartford, Docket No. 535590 (March 4, 1996, Corradino, J.) (16 Conn. L. Rptr. 213); Blackburn v. Miller — Stephenson ChemicalCo., Judicial District of Danbury, Docket No. 314089 (January 12, 1995, Stodolink, J.) (13 Conn. L. Rptr. 364); Southern NewEngland Telephone Co. v. Clifford, Judicial District of Litchfield, Docket No. 057131 (December 10, 1991, Pickett, J.);Michael v. Kenyon Oil Co., Judicial District of Hartford — New Britain at Hartford, Docket No. 344098 (March 22, 1989, O'Connor, J.) (4 C.S.C.R. 337).
Our Supreme Court has found the doctrine of strict liability applicable only to very limited circumstances. Blasting with dynamite was sufficient in Whitman Hotel Corporation v. Elliot Watrous Engineering Co., 137 Conn. 562, 572-3 (1951). In Caporalev. C. W. Blakeslee Sons. Inc., 149 Conn. 79, 86 (1961), the defendant was held strictly liable for damage caused by pile-driver operation. Beyond these cases, the Court has looked to CT Page 14585 the Restatement (Second), Torts, for the standards enunciated in § 520. A review of these factors here suggests at least four of the six enumerated factors weigh in favor of the defendant. Assuming arguendo the use of toxic chemicals to clean a facility is to create a high degree of risk of some harm to persons or property and further assuming that it is likely that the resulting harm will be great, it cannot be concluded that: a) the application of reasonable care would not have eliminated the risk; b) the use of such chemicals for this purpose is not a matter of common usage; c) that the activity is inappropriate in a facility of this kind; and d) the value to the community of conducting this activity is not outweighed by the danger presented. See Comments h-k to § 520. "The imposition of strict liability . . . involves a characterization of the defendant's activities or enterprise itself, and a decision as to whether he is free to conduct it at all without becoming subject to liability for the harm that ensues even though he has used all reasonable care." Comment 1 to § 520.
The fatal flaw in the plaintiffs argument, however, is twofold: 1) the failure to plead sufficient facts to be weighed against the Restatement's determinative factors so as to establish a factual predicate to support the imposition of strict liability; and 2) the failure to assert the use of these chemicals cannot be made safe by the exercise of reasonable care. Absent these allegations, Wall's assertions these chemicals were "hazardous toxic chemicals" (Paragraphs 16 and 17 of Count One of the Amended Revised Complaint) are merely conclusory. "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged."Novametrix Medical Systems. Inc. v. BOC Group. Inc.,224 Conn. 210, 215 (1992). Further, Wall's allegations strongly suggest — in fact, Paragraph 22 of Count One of the Amended Revised Complaint appears to so state — his injuries could have been avoided — and the activity therefore made safe — had he been provided and required to wear proper personal protective equipment and had he been provided site specific hazard training required by federal legislation. The effect of those assertions considered together with the allegations of Counts Two, Four, and Five which state causes of action predicated on the defendant's alleged negligence vitiate a strict liability claim.
The motion to strike Count One is granted.
B. Count Three — Fraudulent Concealment
CT Page 14586
Count Three asserts Nodine's intentionally exposed Wall to a dangerous chemical while concealing from him his exposure to the same and the dangerous consequences thereto (Paragraph 17 of the Third Count of the Amended Revised Complaint). He alleges the defendant is liable to him for fraudulent concealment under § 550 of the Restatement (Second) of Torts (Paragraph 17 of the Third Count).
The defendant asserts this count is insufficient because: a) it is again to plead a legal conclusion without the required factual allegations; b) fraudulent concealment is not a cause of action recognized in this state; and c) assuming such a cause of action exists, § 550 of the Restatement (Second) of Torts is inapplicable because that section applies to business transactions and provides a remedy only for resulting pecuniary losses and not for the injuries and losses claimed by this plaintiff.
The operative facts of Count Three are that Nodine's identified the cleaning substance as "Rapid Clean" and ordered Wall to use the substance providing him only a pair of plastic gloves and a brush and without advising him of the properties of the cleaner he was ordered to use, without conducting any hazard training, and without informing him of the need to protect himself from inhaling and ingesting airborne particles and fumes or of the potentially dangerous consequences of the same. The plaintiff claims the defendant's acts and omissions "intentionally" exposed Wall in the ways described and constituted fraudulent concealment. The gist of this claim is therefore nondisclosure.
Arguably it can be inferred that Nodine's was sufficiently aware of some dangerous property in the chemical cleaner by virtue of having provided Wall gloves to wear while using the substance. That when considered together with the defendant's alleged failure to inform Wall of that property provides the required factual predicate to state a claim the defendant knowingly concealed material information.
The defendant next argues Connecticut does not recognize a cause of action for fraudulent concealment. Even were that so, a motion to strike is the proper procedural vehicle to test whether this state is ready to recognize a newly emerging ground of liability. Grady v. Guerin, Superior Court, Judicial District of CT Page 14587 Stamford — Norwalk at Norwalk, Docket No. 160239 (April 23, 1998, Lewis, J.); accord Shaham v. Wheeler, Superior Court, Judicial District of Danbury, Docket No. 321879 (June 26, 1996, Moraghan, J.) (17 Conn. L. Rptr. 232, 233). However, Connecticut has in fact recognized a common law cause of action for fraudulent nondisclosure. See e.g., Behrmann v. Behrmann, 110 Conn. 433
(1930); Watertown Savings Bank v. Mattoon, 79 Conn. 388 (1905). Mere nondisclosure does not ordinarily amount to fraud. Id. at 393. To constitute fraud on that ground, there must be a failure to disclose known facts and, in addition thereto, a request or an occasion or a circumstance which imposes a duty to speak.Ceferatti v. Boisvert, 137 Conn. 280, 283 (1950). "To be actionable for fraud, the nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue in order to induce the latter to enter into or refrain from entering into a transaction (emphasis added)."Egan v. Hudson Nut Products. Inc., 142 Conn. 344, 347-48 (1955). The plaintiff specifically relies on § 550 of the Restatement, which is entitled "Liability for Fraudulent Concealment" and reads:
 One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering.
The express language of this section and comments a and b which follow underscore the need for there to be a "transaction" between the parties. Black's Law Dictionary, Fifth Edition, defines "transaction" in this way:
 act of transacting or conducting any business; negotiation; management; proceeding; that which is done; an affair. It may involve selling, leasing, borrowing, mortgaging or lending. Something which has taken place, whereby a cause of action has arisen. It must therefore consist of an act or agreement, or several acts or agreements having some connection to each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered (emphasis added).
§ 551 of the Restatement, entitled "Liability for Nondisclosure," is of accord in specifically referencing a CT Page 14588 "business transaction." Under no factual scenario can it be said that Wall and Nodine's were themselves engaged in a business transaction, the effect of which was to alter their legal relations. Additionally, the mere fact Nodine's arguably had knowledge of the allegedly dangerous properties of the chemical cleaner does not subject the defendant to liability in the absence of a request or occasion or a circumstance which imposes a duty to speak. Certainly this is true as to all facts which are open to discovery upon reasonable inquiry. Gayne v. Smith,104 Conn. 650, 652 (1926). Knowledge alone does not import duty nor does the fact Wall was here instructed by the defendant to use the cleaner. Thus, there is not here alleged — nor does it appear there can be — circumstances which would create an exception to the long recognized common law rule that a party may remain silent. There is no fiduciary relationship between the parties; there is not the context of a business transaction; there is no act or agreement the effect of which had the potential to alter the parties' legal relations.
The motion to strike Count Three is also granted.
Sheedy, J.